**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent/Plaintiff, ) | |
| ) | |
| v. ) | Case No. 14-20113-01-JAR |
| ) | 16-2226-JAR |
| PAXTON L. GRAVES, ) | |
| ) | |
| Petitioner/Defendant. ) | |
| ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Petitioner Paxton L. Graves's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (Doc. 33). The Government has responded (Doc. 40) and Petitioner has replied (Doc. 43). After a careful review of the record and the arguments presented, the Court denies Petitioner's motion without an evidentiary hearing.

**I.    Procedural History and Background**

Petitioner Paxton L. Graves was charged with one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Petitioner pleaded guilty to this offense without a plea agreement.[1] The presentence investigation report ("PSIR") calculated Petitioner's Guidelines range as follows: base offense level 24, three-level decrease for acceptance of responsibility, total offense level 21, criminal history category IV, with a resulting Guidelines range of 57 to 71 months.[2]

A sentencing hearing was held July 1, 2015. The government presented testimony from

---

[1] Docs. 23, 24.

[2] Doc. 26 at 5–10, 15.

Justin Baylark, the officer who attempted to detain Petitioner in October 2014. Officer Baylark testified that on October 16, 2014, he was dispatched to a domestic disturbance call in Mission, Kansas, where he observed a vehicle drive between the officers' parked vehicle and strike another parked vehicle with the passenger-side mirror. Officer Baylark approached the vehicle and asked Petitioner, who was driving, to roll down his window, at which time Baylark smelled a strong odor of marijuana. He asked Petitioner to turn off the vehicle and hand him the keys, and Petitioner complied. Baylark noticed a small child in the back seat who was unrestrained and with no car seat; the child's mother was the passenger in the front seat. Baylark asked Petitioner several times to step out of the vehicle; instead of complying, Baylark testified that Petitioner appeared to be putting something in his pockets. After the third request, Baylark testified that he was concerned that Petitioner was hiding a weapon or drugs, so he opened the door, pulled on Petitioner's arm and placed him on the trunk of the vehicle. As he pulled on Petitioner's arm, a semi-automatic handgun fell out of Petitioner's waistband onto the pavement. Baylark testified that while he was placing handcuffs on Petitioner, he elbowed Baylark in the chest and left arm, breaking free of the officer's grip and running away. Baylark gave chase, deployed a taser and missed. Petitioner escaped over two fences and an interstate highway. After obtaining consent to search from the owner of the vehicle, the adult passenger's mother, Baylark found a digital scale and plastic baggie with multiple used marijuana roaches that the passenger said belonged to Petitioner. Petitioner was later identified by the passenger and a database search.

     Detective Dennis Davis testified that on October 17, 2014, he received a report regarding a traffic stop in which Petitioner was a passenger. After a firearm was located in the vehicle, a canine search found marijuana in the area of the car where Petitioner had been seated. The

driver of the vehicle told officers that Petitioner phoned him earlier that evening and asked for a ride; the driver picked Petitioner up close to where the chase terminated earlier that evening.

Petitioner's counsel, Thomas Bartee, made four objections to the PSIR: (1) he denied that Petitioner elbowed the officer in the chest; (2) he denied that Petitioner was in actual possession of ecstasy pills in a prior conviction; (3) the domestic violence program condition of release; and (4) the curfew, home confinement, and electronic monitoring conditions of release.[3] The government responded to these objections and the PSIR writer declined to amend the PSIR.[4] Counsel then filed a sentencing memorandum seeking a downward variance sentence of 48 months' imprisonment.[5] The government opposed Petitioner's request, asking instead for a mid-range sentence of 64 months' imprisonment.[6]

After hearing testimony and argument from counsel at the sentencing hearing, the Court denied all four of Petitioner's objections to the PSIR. First, the Court found credible Officer Baylark's testimony that Petitioner committed battery on the officer. Second, while the Court did not find that Petitioner possessed the ecstasy pills seized in a prior offense, those pills were in the residence that he had been seen leaving, along with a firearm. Finally, with respect to the conditions of supervised release, the Court found that given Petitioner's history as a repeat offender, the conditions were important and necessary, including a curfew, electronic monitoring, search and home confinement, as well as participation in a domestic violence

---

[3] Doc. 26 at 19–22.

[4] *Id.*

[5] Doc. 25.

[6] Doc. 28.

program.

The Court also denied Petitioner's request for a downward variance, instead imposing a sentence of 65 months' imprisonment.[7] The Court noted Petitioner's extreme criminal history and the circumstances and nature of the prior crimes, as well as the underlying crime in these proceedings. The Court did not sentence Petitioner to the high end of the Guidelines range, giving him credit for his employability and willingness to work hard. Petitioner did not file a direct appeal, and this motion was filed on April 7, 2016. The government acknowledges that Petitioner timely filed the instant 28 U.S.C. § 2255 motion within the applicable time period, one year after the date the judgment becomes final.[8]

## II. Legal Standards

### A. General

Under § 2255(a):

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

If the court does not find that the movant is entitled to relief, based upon an examination of the motion, attached exhibits, and the record, the court must dismiss the motion.[9] However, unless the motion, files, and record conclusively show that the movant is not entitled to relief, an

---

[7] Doc. 31.

[8] *See* 28 U.S.C. § 2255(f).

[9] Rule 4(b), Rules Governing Section 2255 Proceedings for United States District Courts.

evidentiary hearing must be held.[10] A petitioner must allege facts, which if proven, would warrant relief from his conviction or sentence.[11] If the factual allegations in the § 2255 motion contradict the record, are inherently incredible, or are conclusions rather than statements of fact an evidentiary hearing is not necessary.[12]

Because Petitioner's submissions were filed *pro se*, his pleadings must be construed liberally and not to the standard applied to an attorney's proceedings.[13] If a *pro se* petitioner's motion can be reasonably read to state a valid claim on which he could prevail, the court should do so despite a failure to cite proper legal authority or follow normal pleading requirements.[14] However, it is not "the proper function of the district court to assume the role of advocate for the *pro se* litigant."[15] For that reason, the court shall not supply additional factual allegations to round out a petitioner's claims or construct a legal theory on his behalf.[16]

### B. Ineffective Assistance of Counsel

Claims dealing with the ineffective assistance of counsel are governed under the two-part test enunciated by the Supreme Court in *Strickland v. Washington*.[17] A petitioner must show (1)

---

[10] 28 U.S.C § 2255(b).

[11] *See Hatch v. Oklahoma*, 58 F.3d 1447, 1471 (10th Cir. 1995), *cert. denied*, 517 U.S. 1235 (1996).

[12] *Arredondo v. United States,* 178 F.3d 778, 782 (6th Cir. 1999) (quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995)); *see also Hatch*, 58 F.3d at 1471 ("the allegations must be specific and particularized, not general or conclusory"); *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (rejecting ineffective assistance of counsel claims which are merely conclusory in nature and without supporting factual averments).

[13] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[14] *Id.*

[15] *Id.*

[16] *See Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

[17] 466 U.S. 668 (1984).

that his counsel's representation fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for the deficient performance of counsel, the outcome of the proceedings would have been different, thereby constituting prejudice to the petitioner.[18]

In proving the first prong of the *Strickland* test, a petitioner must demonstrate that the omissions of counsel fell "outside the wide range of professionally competent assistance."[19] This standard is "highly demanding."[20] Strategic decisions made by counsel are presumed correct, unless those decisions were "completely unreasonable, not merely wrong, so that [they] bear no relationship to a possible defense strategy."[21] Judicial scrutiny of the adequacy of attorney performance must be strongly deferential and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[22] The reasonableness of challenged conduct must be evaluated from the counsel's perspective at the time of the error, not in hindsight.[23]

In proving the second prong of the *Strickland* test, a defendant must show that his counsel's deficient performance actually prejudiced his defense.[24] To prevail on this prong, a defendant "must show there is a reasonable probability that, but for his counsel's unprofessional

---

[18] *See id.* at 688–91.

[19] *Id.* at 690.

[20] *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986).

[21] *Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000) (quotation and citations omitted).

[22] *Strickland*, 466 U.S. at 689.

[23] *Id.*

[24] *Id.* at 687.

errors, the result of the proceeding would have been different."²⁵  A "reasonable probability" is a "probability sufficient to undermine confidence in the outcome."²⁶  To determine this, the court must focus on "whether counsel's deficient performance render[ed] the result of the trial unreliable or the proceeding fundamentally unfair."²⁷

A petitioner must demonstrate both of the of the *Strickland* prongs to establish a claim of ineffective assistance of counsel, and a failure to prove either is dispositive.²⁸  "The performance component need not be addressed first. 'If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.'"²⁹

### III.   Discussion

Petitioner alleges that he received ineffective assistance of counsel on two grounds: (1) counsel failed to investigate his encounter with law enforcement during the traffic stop; and (2) counsel failed to raise the "innocent possession" defense.  Petitioner also contends that his Due Process rights were violated.  The Court addresses each claim in turn.

#### A.   Failure to Investigate

Petitioner contends that counsel was ineffective because he failed to investigate whether Officer Baylark sustained the alleged damage to his vehicle.  The Court finds that these bare

---

²⁵*Id.* at 694.

²⁶*Id.*

²⁷*Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

²⁸*Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

²⁹*Id.* (quoting *Strickland*, 466 U.S. at 697); *see also Romano v. Gibson*, 239 F.3d 1156, 1181 (10th Cir. 2001) ("This court can affirm the denial of habeas relief on whichever *Strickland* prong is the easier to resolve.").

allegations are insufficient to constitute a cognizable claim of ineffective assistance of counsel. "An analysis of an ineffective assistance of counsel claim begins with the presumption that trial counsel was competent to provide the guiding hand that the accused needed, and therefore the burden is on the accused to demonstrate both a deficient performance and resulting prejudice."[30] The defendant must prove this burden by a preponderance of the evidence.[31]  Because Petitioner does not explain how this information is material or relevant, he cannot claim that his counsel was ineffective in failing to investigate.  Nor does Petitioner explain how, if obtained, this information would have changed the result of his decision to enter a guilty plea.  In the absence of such explanations, Petitioner does not sustain his burden to demonstrate either deficient performance or resulting prejudice, and this claim must fail.[32]

### B.     Innocent Possession

To obtain a conviction under 18 U.S.C. § 922(g)(1), the government must prove beyond a reasonable doubt that (1) the defendant was previously convicted of a felony; (2) the defendant thereafter knowingly possessed a firearm; and (3) the possession was in or affecting interstate commerce."[33]  Petitioner asserts that counsel was ineffective because he failed to devise a defense strategy for Petitioner based on an "innocent possession" theory.  Courts have held that the defense is available when the record reveals that

---

[30]*Gilson v. Sirmons*, 520 F.3d 1196, 1245 (10th Cir. 2008).

[31]*Sallahdin v. Mullin*, 380 F.3d 1242, 1248 (10th Cir. 2004) ("To surmount the strong presumption of reasonable professional assistance, a criminal defendant bears the burden of proving, by a preponderance of the evidence, that his trial counsel acted unreasonably.").

[32]Moreover, Officer Baylark testified about the stop and resulting chase at the sentencing hearing; counsel for Petitioner cross-examined the officer in detail about his version of the encounter.

[33]*United States v. Ledford*, 443 F.3d 702, 713 (10th Cir. 2005).

> (1) the firearm was attained innocently and held with no illicit purpose and (2) possession of the firearm was transitory, i.e., in light of the circumstances presented, there is a good basis to find that the defendant took adequate measures to rid himself of possession of the firearm as promptly as reasonably possible.[34]

In *United States v. Baker*, however, the Tenth Circuit declined to recognize this defense, as it would expand the "necessity defense" to § 922(g)(1) by eliminating the requirement that defendant show that he had no legal alternative to violating the law.[35] The court explained the difference between knowing and willful possession, stating that "the government need not establish that the defendant possessed the contraband for any illicit purpose; the defendant's motive for possessing the firearm is irrelevant to the crime."[36] The court further noted that the Tenth Circuit has previously characterized federal firearms laws as imposing "something approaching absolute liability."[37]

At no time prior to or at the sentencing hearing did Petitioner claim that he was not guilty of the offense on this or any other theory. Nor does he set forth any factual basis in this motion that would support an innocent possession defense. Although Petitioner pleaded guilty without a plea agreement, a factual basis was given that established all the elements of the offense of conviction. Petitioner does not assert that his guilty plea was not knowingly or voluntarily entered into, nor has he tied this assertion to his claim that counsel was ineffective for failure to

---

[34] *United States v. Mason*, 233 F.3d 619, 624 (D.C. Cir. 2000).

[35] 508 F.3d 1321, 1325–26 (10th Cir. 2007) (citing *United States v. Al-Rekabi*, 454 F.3d 1113, 1121 (10th Cir. 2006) (holding the necessity defense requires the defendant to show: "(1) there is no legal alternative to violating the law; (2) the harm to be prevented is imminent; and (3) a direct causal relationship is reasonably anticipated to exist between the defendant's action and the avoidance of the harm.").

[36] *Id.* (citations omitted).

[37] *Id.* (quoting *United States v. Adkins*, 196 F.3d 1112, 1115 (10th Cir. 1999)).

9

investigate the initial encounter with law enforcement.

Instead, counsel's sentencing strategy was to convince the Court that a downward variance was warranted, and this strategy was zealously pursued by Mr. Bartee. "Whether to raise a particular defense is one aspect of trial strategy, and informed or tactical decisions on the part of counsel are presumed to be correct, unless they were completely unreasonable, not merely wrong."[38] Under the facts and circumstances of this case, counsel's decision not to assert an innocent possession defense was reasonable. Indeed, Petitioner has not shown that such a defense is even supported by the record. Petitioner's motion is denied on this ground.

### C. Due Process Violations

Although not clear, Petitioner first appears to argue that his Due Process rights were violated because a state law enforcement agency transferred his firearm to a federal law enforcement agency. In support, Petitioner cites K.S.A. § 60-4103, a Kansas state forfeiture statute, as well as 18 U.S.C. § 983, which applies to civil forfeiture proceedings in cases in which a state or local law enforcement agency has seized property and turned it over to a federal law enforcement agency for the purposes of forfeiture under federal law.[39] However, Petitioner's firearm was forfeited under the applicable federal criminal forfeiture statutes, 18 U.S.C. § 924(d) and 28 U.S.C. § 2461(c). In fact, Petitioner entered into a Forfeiture Agreement with the government, whereby he agreed to the forfeiture of his firearm under these statutes and knowingly and voluntarily waived all constitutional, legal, and equitable defenses to the

---

[38]*United States v. Baker*, 371 F. App'x 987, 2010 WL 1417855, at *2 (10th Cir. Apr. 9, 2010) (quoting *Anderson v. Atty. Gen. of Kan.*, 425 F.3d 853, 859 (10th Cir. 2005)).

[39]18 U.S.C. § 983(1)(A)(iv).

forfeiture of this property.[40]  Petitioner does not set forth any grounds or evidence why this Agreement should not be enforced or how his rights were violated.

Second, Petitioner appears to argue that there was a Due Process violation committed by charging him in federal rather than Kansas state court.  But again, Petitioner fails to cite any authority for this proposition.  Federal jurisdiction clearly existed to charge Petitioner with violating  § 922(g)(1).  Petitioner's Due Process arguments are without merit.

## IV.   Certificate of Appealability

Effective December 1, 2009, Rule 11 of the Rules Governing Section 2255 Proceedings requires the Court to grant or deny a certificate of appealability ("COA") when making a ruling adverse to the petitioner.  "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."[41]  A petitioner may satisfy his burden only if "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[42]  A petitioner is not required to demonstrate that his appeal will succeed to be entitled to a COA.  He must, however, "prove something more than the absence of frivolity or the existence of mere good faith."[43]  "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims.  In fact, the statute forbids it."[44]  For the reasons detailed in this Memorandum and Order, Petitioner has not made a

---

[40]Doc. 30.

[41]28 U.S.C. § 2253(c)(2).  The denial of a § 2255 motion is not appealable unless a circuit justice or a circuit or district judge issues a certificate of appealability.  *See* Fed. R. App. P. 22(b)(1); 28 U.S.C. § 2253(c)(1).

[42]*Saiz v. Ortiz*, 393 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting *Tennard v. Dretke*, 524 U.S. 274, 282 (2004)).

[43]*Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003).

[44]*Id.* at 336; *see also United States v. Silva*, 430 F.3d 1096, 1100 (10th Cir. 2005).

substantial showing of the denial of a constitutional right, and the Court denies a COA as to its ruling denying his § 2255 motion.

**IT IS THEREFORE ORDERED BY THE COURT** that Petitioner Paxton Graves's Motion to Vacate Pursuant to 28 U.S.C. § 2255 (Doc. 33) is DENIED without an evidentiary hearing. The Court also denies Petitioner a COA.

**IT IS FURTHER ORDERED** that the following motions are DENIED as moot: Motion to Oppose Government Denial of Evidentiary Hearing (Doc. 37); Motion for Reconsideration of Court's Order on Motion for Additional Time to File Response (Doc. 38); Motion for Disclosure of Fees Paid Under the CJA (Doc. 39); Motions for Ruling on Doc. 39 (Docs. 41, 42); Motion to Ask Court to Render Decision (Doc. 44); and Motion for Return of Property (Doc. 45).

**IT IS SO ORDERED.**

Dated: August 11, 2016  S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE